O’Neall, J.
From the view which I have taken of this case, it will or>ly be necessary that our opinion should be ^expressed on the statute of limitations which has been relied upon by the defendants, as a bar to the claim of the complainants.
The Chancellor overruled the plea, on the ground that “ an insolvent debtor is not at liberty to plead the statute of limitations in cases of alleged fraud.” This disability, if it exist, must arise out of some provision of the “Act for the more effectual relief of insolvent debtors,” &c. The 10th section provides, that “ whereas, many creditors of the person so sued and petitioning for his or her discharge, may not be inclined to accept a dividend of such petitioner’s estate, but will rather wait in hopes of securing some fuller expectation from the said petitioner’s future better fortune; but iii as much as the said creditors by note, book account, or contract, who, through indulgence or better expectation may delay suits against such petitioner, may become barred by the act of limitations of this Province; be it therefore enacted, that any person or persons whatsoever, who shall be hereafter in the custody of the Provost Marshal of this Province, or of his gaol keeper or deputy, and who shall once petition the Justices of this Province for his or her discharge, every such person or persons, his or their executors or administrators, shall be incapacitated ever afterwards to plead the act of limitations of this Province, in bar to any action that may be afterwards brought against him or them, by any person or persons that were his or their creditors, for any demand or cause of action that existed at the time of exhibiting the petition for the discharge of the said person when in custody. And in case the act of limitation of this Province shall afterwards be.pleaded by any such person or persons, the said plea shall be set aside by the Court where such action shall be brought, upon motion made by the plaintiff or his attorney in such action, upon producing the petition before exhibited by the defendant for his having the benefit of this act.” P. L. 251. It is only necessary that the clause should be stated, to satisfy every one that it does not apply to this case. The preamble, which is said to be the key to the enactment, shows that it was intended for the protection of such creditors wk° miSht ne^ler sue nor accept a ^dividend of the debtor’s estate. The very next clause provides the means whereby evidence of such debts may be perpetuated, and repeats the denial of the benefit of the statute of limitations. The present plaintiffs were suing creditors, at the time the defendant, Ilubbell, took the benefit of the insolvent debtors’ Act, and one of them is his assignee ; they cannot, therefore, claim that as against them he cannot plead the statute of limitations. His discharge under the insolvent debtors’ Act was a discharge from their debts, and the only claim which they can have against him, is under the assignment. The “ demand or cause of action ” arising from it, did not exist “ at the time of exhibiting his petition for his discharge it is sub *147 sequent thereto, and it is not even withm the letter, much less the meaning of the section quoted. But it must be remembered, that Hubbell in this case claims to hold the property in dispute not for himself, but as a trustee for his wife and children ; they are parties, and if the defence of the statute of limitations was not even competent for him, it would be for them, and if sufficient to protect them, would prevent a decree from being made which would defeat their title. It is therefore perfectly immaterial in what way it is interposed, whether by Hubbell or his cestui que trusts, its legal effect must be considered and decided, in precisely the same manner as if Hubbell had never taken the benefit of the insolvent debtors’ Act.
It is true, that the words of the act of limitations do not in terms provide a time within which such suits for relief against frauds must be brought; yet lapse of time in Equity, in analogy to the statute, has been held to bar relief for fraud. If an action at law were brought to recover damages for a fraud, it would be an action on the case and barred in four years, by the provisions of the Act of 1712. The gravamen of the action at law is the deceit and the injury consequential on it. To entitle a party to relief from a fraud in equity, he must show that he is prejudiced by it, and in consequence of this prejudice or injury it is that the Court proceeds to decree against the fraud. The analogy between the action on the case for a fraud, and a bill in equity to be relieved against it, is as direct as can exist between a case *in a Court of Law and a case in a Court of Equity.
When does the cause of action for a fraud accrue ? In equity, there is no doubt that it accrues from the discovery of it. The party may then proceed and obtain relief, and if he fail to do so for four years, is not the reason just as strong, that he should be barred in equity, as at law ? The only difference perhaps in the law in this respect, as applied to a case at law or in equity, arises.from the time at which the cause of action is considered as accruing. Generally, the legal cause of action is regarded as accruing- from the time the fraud was perpetrated ; the equitable cause of action, from the discovery. This seems to me the only distinction; and the statute would run against relief from a fraud from the time of its discovery, wherever an action at.law, if it could be brought for the same, would be within the act. I myself regard a bill in equity for relief against a fraud as a personal action, accruing to the party in consequence of the injury done to his rights ; and that generally, he would be barred in four years from the discovery of the fraud. The rule in equity is when more than four years have elapsed before filing the bill for relief, that the complainant should state in his bill that the fraud was discovered within four years before the bill was filed. In Vin. Ab. 13, 542, it is said, “ where fraud is, no length of time can bar. And it was admitted by the counsel on the other side, that no time will bar where there is a fraud, but said that that is to be understood where the fraud is concealed. For if it be known, it certainly may, and of this opinion Lord Chancellor King seemed to be.” The same doctrine is sustained by the South Sea Company v. Wymondsel, 3 Pr. Wm. 143. The case of Black and wife, and others, v. M’Junkin, executor of Thomas et al., decided at Columbia by the Court of Appeals in Equity, proceeded upon the principle that after a lapse of four years from the discovery of the fraud, the statute would *148 bar the relief. In that case, an insolvent debtor who had taken the benefit of the Act, just before applying to be discharged, fraudulently conveyed certain slaves to his father. The bill was filed by the suing *cre<btor, but there was no allegation in the bill that the fraud had been discovered within four years before the filing of the bill. The original bill abated by the death of the elder Thomas, and was revived after four years, against his executor, and the legatees of the slaves fraudulently conveyed to him by his son, the younger Thomas. It was held,-by the whole Court, 1st. That it was neeeseary that it should have been alleged that the fraud was discovered within four years before the filing of the bill,’ to prevent the operation of the statute : and, 2dly. That the plaintiffs were barred. In Van Rhyn v. Vincent, 1 M’C. Ch. Rep. 310, Judge Nott remarks : “And even in cases of fraud, the Court of Equity will allow the statute to run from the time the fraud is discovered.”
These authorities put it beyond all question, that the statute will run against relief claimed in cases of fraud, from the time it is discovered; and that to take the case out of the statute, it is necessary that it should be stated in the bill that it was not discovered until within four years before the bill was filed. The application of these principles to the case before us, is plain and obvious. For it is plain, that whatever was the fraud existing in the conveyance of the property to the defendant Hubbell, in trust for his wife and children, it existed and was known to the assignee, Prescott, at the time-the defendant was discharged under the Insolvent Debtors’ Act. The suggestion which he then filed to prevent his discharge, incontestably proves that fact. It is not set out in the bill, that the fact of fraud in the conveyances was discovered within four years before the filing of the bill. The defendant, Hubbell, as trustee, and his family his cestui que trusts, cannot be regarded as holding by a secret fraud. If a fraud exists in the transaction, it was well known, and they cannot, therefore, be said to have held apparently in one right, and secretly in another, which would have deprived them of 1he benefit of the statute. Their rights were adverse to the rights of Ilubbell’s creditors. But it is said, the statute cannot be pleaded to the judgment obtained by Prescott against Hubbell. To say nothing of the effect of the assign-ment and discharge under *the Insolvent Debtors’ Act, which is itself a discharge of the debt to Prescott, and of course of the active lien of the judgment, it can, I think, be demonstrated, that the bhr to the relief claimed here is no bar to the judgment. The party does not come here to have execution of his judgment, or to recover upon it, as his immediate cause of action : if he did, then, it is true, the statute would not apply. His remedy,''in both these respects, is at law. If legally the property in dispute is subject to the lien of the judgment, the complainant has no business in this Court — his execution would have given him ample relief. But the title to the property claimed to be subjected to the payment of the plaintiff’s debt, never was in Hubbell in his own right. He is a mere trustee, to whom the conveyance was made. There can, therefore, be no legal lien of the judgment. The plaintiffs’ equity is, that the money of Hubbell, which ought to have been applied to the payment of their debts, was vested in the purchase of the property. This at most is a mere resulting trust, and the right to set it up as against *149 the defendants, must depend upon the fact whether the money which is the foundation of it, could be recovered by the assignee from the cestui que trusts, (to whose use it is alleged to have been applied) if it were in their hands as a donation from Hnbbell. No one I presume will doubt that at law he could not recover it after four years, and in this Court the only difference as to the operation of the statute of limitations, would be the substitution of the discovery of the fraud, for the accrual of the cause of action at law. It was known to him in 1821, as he alleges in his suggestion that the property was purchased with Hubbell’s money. Seven years and four months after his knowledge of it, he files this bill, virtually for the recovery of the money invested in the purchase of the property. To a claim for an account for the money applied by Ilubbell in the purchase of the property, the statute would be a good defence by his cestwi que trusts; and it seems to me it must be so.likewise against the claim to set up the resulting trust. This is not depriving the judgment of any of its legal effects — it is merely refusing to suffer fraud or a resulting trust, to be set up to defeat a *legal title, when more than four years have elapsed, after the plaintiffs have a knowledge of the fact on which their claim to relief is predicated. I am, therefore, satisfied that the statute is a protection to the defendants. A motion was made for leave to amend, by alleging that the fraud was not discovered until within four years before the filing of the bill. This is an' application to the discretion of the Court — and we should not hesitate, even at this late stage of the case, to allow the amendment, if any good could result from it. But the facts are all before us, and we are perfectly satisfied that they show conclusively that the fraud was known to the plaintiffs more than four years before the filing of this bill. It may be, that they had not all the evidence of it then which they have now; but that is not the point on which the question turns — it is, whether they knew of the fraud, not whether they could prove it. The motion to amend, must, therefore, be refused.
It is ordered and decreed, that the Chancellor’s decree be reversed, and the bill be dismissed.
Jonhson and Earle, Js., concurred.